THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. KERRY L. POPE, Defendant-Appellant.

Fourth District   No. 4—94—0928

Opinion filed October 24, 1996.

Daniel D. Yuhas, Gary R. Peterson, and William D. McGrath, all of State Appellate Defender's Office, of Springfield, for appellant.

Barney S. Bier, State's Attorney, of Quincy (Norbert J. Goetten, Robert J. Biderman, and Charles F. Mansfield, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE COOK delivered the opinion of the court:

Following a jury trial, defendant Kerry Pope was convicted of three counts of aggravated criminal sexual assault. Ill. Rev. Stat. 1991, ch. 38, par. 12—14(b)(1), now 720 ILCS 5/12—14(b)(1) (West 1994). During the preparation of the presentence investigation report, defendant submitted a written statement to the probation office. In this statement, defendant essentially alleged that he received ineffec-

tive assistance of counsel. At the sentencing hearing, the trial court indicated that it had read defendant's statement, but it conducted no inquiry into the statement's allegations. The court then sentenced defendant to consecutive sentences totalling 80 years' imprisonment. Defendant appeals, contending that the trial court erred in not conducting an inquiry into his allegations of ineffective assistance of counsel. We affirm.

At trial, the evidence established that defendant met A.K.G. sometime in the summer or fall of 1993, and soon thereafter he became a frequent overnight visitor at her Quincy, Illinois, residence. At the time of their meeting, defendant was 32 years old and A.K.G. was 12. Defendant initiated sexual activity with A.K.G., telling her that he intended to marry her when she turned 14. A.K.G. testified that defendant sexually penetrated her numerous times between November 1993 and March 1994, but defendant was charged with only three of these incidents. The first incident occurred sometime in November 1993, in A.K.G.'s Quincy residence, the second occurred in February 1994, while A.K.G. and her family were living temporarily in a hotel, and the third occurred in March 1994, while A.K.G. and defendant were overnight guests in the home of Carol Reed.

Defendant did not testify at trial, but after his conviction, he challenged the State's facts in an unsworn statement that was included in defendant's presentence investigation report. In this statement, defendant expressed dissatisfaction with his appointed counsel. First, defendant alleged that his counsel failed to call witnesses. Defendant asserted he first met A.K.G.'s mother in September 1992, was arrested for an unrelated offense in October 1992, then spent eight months in Illinois and Arkansas jails before returning to Quincy. He continued:

> "I lived with a woman, Tammy Thomson, then with an ex[-]girlfriend Lynda Young, then with my little brother, all of which were across town [from A.K.G.]. At no time did I see [A.K.G.] or her family. Not until I moved back in with my parents late last fall 93. All of this could and should have been proven. These witnesses should have been called."

Defendant further alleged that Young could have testified that defendant spent weekends at her Quincy residence, contrary to the State's assertion that defendant was at A.K.G.'s residence on a daily basis.

In addition to criticizing counsel's failure to call witnesses, defendant complained that counsel "never asked the right questions in cross[-]examination." Defendant alleged that he only met twice with his attorney before trial, "at which time I tried to get [counsel] to call my witnesses, which obviously he refused to do. He told me I was a

liar and to shut up. Then he told me to screw myself and walked out. When we did talk, he cut me short or twisted my words around." Finally, defendant stated, "I want it on record that I could have proved my case but I was misinformed or not informed at all as to my options and rights by—counsel, and was poorly defended by any standard."

Defense counsel did not file a post-trial motion. At the sentencing hearing, defense counsel stated that he had reviewed the presentence investigation report with defendant, and that there were "obviously some things we don't agree with." Counsel made no clear reference to defendant's allegations of ineffective assistance of counsel, and defendant said nothing on the issue at the hearing. The trial court indicated that it had read defendant's statement, but the court did not inquire about it. The court said, "[A]lthough you have alluded to the necessity for others that may have contradicted certain aspects of testimony, I found that the witnesses were in fact credible and that there was proof beyond a reasonable doubt for all three of these offenses." Accordingly, the court imposed consecutive sentences totalling 80 years' imprisonment.

■ When a *pro se* defendant raises a post-trial claim of ineffective assistance of counsel, the trial court may, under certain circumstances, appoint new counsel to assist the defendant in the presentation of his claim. *People v. Giles*, 261 Ill. App. 3d 833, 847, 635 N.E.2d 969, 979 (1994); *People v. Krankel*, 102 Ill. 2d 181, 189, 464 N.E.2d 1045, 1049 (1984). The trial court should first conduct an "adequate inquiry" to determine the factual basis for defendant's claims. *People v. Johnson*, 159 Ill. 2d 97, 125, 636 N.E.2d 485, 497 (1994). If the court determines that the claims lack merit or pertain only to matters of trial strategy, then new counsel is unnecessary. *Giles*, 261 Ill. App. 3d at 847, 635 N.E.2d at 979. If, however, the inquiry reveals trial counsel's possible neglect of the case, then the court should appoint new counsel. *Giles*, 261 Ill. App. 3d at 847, 635 N.E.2d at 979. The appointed counsel can then "undertake an independent evaluation of the defendant's claim and present the matter to the court from a detached, yet adversarial, position." *People v. Jackson*, 131 Ill. App. 3d 128, 139, 474 N.E.2d 466, 474 (1985). Trial counsel can hardly be expected to argue his own incompetency. *People v. Ruiz*, 132 Ill. 2d 1, 9, 547 N.E.2d 170, 173 (1989).

Defendant contends that because the trial court never conducted an inquiry into his allegations of ineffective assistance of counsel, we must remand for the court to conduct such an inquiry. The trial court could then determine whether the appointment of new counsel is warranted. We disagree.

■ As a threshold matter, it is not clear that defendant adequately raised the issue of trial counsel's alleged incompetence. Defendant neither filed a *pro se* motion nor did he ever request appointment of new counsel. However, a filed, formal motion is not always necessary to trigger a trial court's duty to inquire into allegations of ineffective assistance. In *People v. Finley*, 222 Ill. App. 3d 571, 584 N.E.2d 276 (1991), the defendant wrote the trial judge a letter in which he alleged that his trial counsel was ineffective for failing to call specific witnesses who could have contradicted the State's case. The first district concluded that remand was necessary to determine whether appointment of new counsel was warranted because the trial judge failed to give proper consideration to the potentially meritorious claims contained in the letter. *Finley*, 222 Ill. App. 3d at 584, 584 N.E.2d at 285. Similarly, in *Giles*, we concluded that the defendant "essentially filed a *pro se* motion with the trial court" when he sent a letter to the trial judge. *Giles*, 261 Ill. App. 3d at 847, 635 N.E.2d at 979.

■ Here, defendant never asked the trial court for relief. If a trial court receives notice that a defendant has received inadequate representation, the court can *sua sponte* take steps to safeguard the defendant's rights. However, we held that where a trial court simply becomes aware that a defendant has criticized counsel's performance, the court has no duty to investigate defendant's claims if they are patently without merit or unsupported by specific factual allegations. We note that had defendant filed a petition for post-conviction relief under the Post-Conviction Hearing Act (725 ILCS 5/122—1 *et seq.* (West 1994)), the trial court could have dismissed without a hearing claims that were frivolous, patently without merit, or unsupported by sufficient *facts* from which the court could have found a valid claim of deprivation of a constitutional right. See *People v. Lemons*, 242 Ill. App. 3d 941, 944-46, 613 N.E.2d 1234, 1236-37 (1993). No greater attention should be afforded more informal claims.

■ Defendant's claims were either meritless on their face or unsupported by sufficient factual allegations. First, defendant claimed that his attorney failed to call Young, Thomson, and his brother as witnesses. Whether a failure to investigate and present evidence is incompetence depends upon the value of the evidence. *People v. DeRossett*, 262 Ill. App. 3d 541, 545, 634 N.E.2d 1257, 1260 (1994). Defendant alleged that these witnesses could have testified regarding his whereabouts prior to fall 1993. This testimony is simply irrelevant, as the offenses allegedly commenced in November 1993. Defendant further alleged that Young could have testified that he spent weekends across town at Young's home. Even if true, this testimony

does not provide defendant with an alibi. Defendant could have spent time in Young's home and still have been a frequent overnight guest in A.K.G.'s home. Counsel's failure to present irrelevant testimony is not incompetence. See *DeRossett*, 262 Ill. App. 3d at 545, 634 N.E.2d at 1260. Second, defendant claimed that his attorney failed to ask the "right questions" on cross-examination. Defendant does not suggest what questions counsel should have asked. Moreover, trial counsel's decisions regarding the extent of cross-examination are matters of trial strategy, and such decisions are not subject to review. See *People v. Whitamore*, 241 Ill. App. 3d 519, 525, 608 N.E.2d 1304, 1310 (1993). Third, defendant claimed trial counsel had a bad rapport with defendant. Counsel allegedly called defendant a liar and told him to screw himself. However, "the sixth amendment guarantee of counsel does not also guarantee a 'meaningful relationship' or rapport between an accused and his counsel." *DeRossett*, 262 Ill. App. 3d at 544, 634 N.E.2d at 1259, quoting *Morris v. Slappy*, 461 U.S. 1, 13-14, 75 L. Ed. 2d 610, 621, 103 S. Ct. 1610, 1617 (1983). Finally, defendant claimed that he was not informed or was misinformed of his rights and options. Defendant lists only two specifics: (1) he was not informed that the State could present witnesses in addition to those who testified at the preliminary hearing, and (2) he was not informed that he could not present new evidence on appeal. We cannot see how defendant was prejudiced by this lack of information.

We conclude that the trial court did not err in failing to consider defendant's meritless and unsupported claims of ineffective assistance of counsel. Remand is unnecessary. However, we note that if defendant is able to flesh out his claims with sufficient factual allegations, he may still petition for post-conviction relief. See 725 ILCS 5/122—1 *et seq.* (West 1994).

Affirmed.

STEIGMANN and KNECHT, JJ., concur.